Carroll
No. 81-251

### MAPLE VALLEY SKI AREA, INC.

v.

### BERNARD SHANNON & a.

July 2, 1982

*Schroeder & McLetchie*, of Ossipee (*Erland C. L. McLetchie* on the brief), by brief for the plaintiff.

*Law Offices of James R. Patten*, of Ossipee (*Mr. Patten* on the brief), by brief for the defendants.

DOUGLAS, J.   The issue in this case is whether the defendants are liable to the plaintiff under a guaranty contract which they executed in May 1978. We hold that the defendants are liable and affirm the trial court.

In May 1978, the plaintiff, Maple Valley Ski Area, Inc. (Maple Valley) entered into a contract to purchase a "Zephyr" monorail slide system from the American Zephyr Corporation (American

Zephyr). Edward Astrachan and Bernard Shannon, officers of the latter corporation, also signed a guaranty contract in which they agreed to reimburse the plaintiff for "net costs directly incurred in connection with the slide installation" if the equipment was not installed properly.

In accordance with the parties' contract, Maple Valley paid $14,700 and received the first of two deliveries, consisting of the straight sections of the monorail. The curved sections of track, which arrived in the second shipment, were defective; therefore Maple Valley refused to pay the $20,000 balance due under the contract. Maple Valley wanted to terminate the contract, but American Zephyr did not have enough money to refund the initial $14,700 payment. Therefore, "as a last resort," Maple Valley entered into a supplemental agreement with American Zephyr on July 31, 1978. This agreement amended the May 1978 contract and provided that the plaintiff would not have to pay any more money to American Zephyr until a completed slide system was erected. The agreement also forgave certain penalties assessed against American Zephyr and deferred installation until the spring of 1979. The following spring, it became apparent that American Zephyr was not going to perform. Maple Valley returned the defective curved track to the manufacturer for repairs; however, the company refused to repair the track without first being paid. The defendants did not pay the steel company, and the track was never repaired or returned to Maple Valley. In addition, defendant Bernard Shannon told Maple Valley that the defendants could not perform their contract obligation. When the defendants refused to return the $14,700 which Maple Valley had advanced, it sued the two defendant guarantors. The Superior Court (*Wyman*, J.), approving the Master's (*Meyer Green*, Esq.) recommendation, awarded the plaintiff $14,700 in damages minus $1,000, the scrap value of the first shipment of steel. The defendants appealed.

■■ The defendants argue that the July 31, 1978, supplemental agreement discharged their guaranty obligations because it drastically changed the performance required under the May 1978 contract. We disagree. A guarantor may be discharged when the principal contract is altered materially so as to injure his interests. 38 AM. JUR. 2d *Guaranty* § 81, at 1088 (1968). In this case, the changes in payment and performance terms were neither material nor injurious to the guarantors. By deferring installation and forgiving penalties, the supplemental agreement actually benefited the defendants.

■ The defendants also assert that they cannot be held liable as

guarantors because Maple Valley failed to fulfill a condition precedent to their performance; that is, paying them for the defective track which they had delivered. We reject this argument. When "non-conformity . . . with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole." RSA 382–A:2–612(3). In this case, the second delivery of defective track impaired the value of the parties' entire contract; the monorail could not have been constructed without the curved sections of track. Maple Valley, therefore, was entitled to reject both installments, and was not obligated to pay for the second delivery. *See id.;* RSA 381–A:2–301. Maple Valley's failure to pay for the defective track did not affect the defendants' obligations under their guaranty contract.

The next issue concerns the value of the first shipment of steel, which remained in Maple Valley's possession. At trial, the president of Maple Valley testified that the steel still in its possession was of "no use whatsoever" to the ski area and could only be sold as scrap. He testified that the steel was worth approximately $1,125 and stated "I received an offer of $1,000." The master found that the steel was worth $1,000 and deducted that amount from the damages that he ordered the defendants to pay.

■ On appeal, the defendants argue that evidence of the $1,000 offer was inadmissible hearsay because Maple Valley was using an out-of-court declarant's statement to prove the value of the steel. This argument has no merit. The president of Maple Valley did not testify that he had received a $1,000 offer to prove that the declarant, an unidentified scrap iron dealer, considered the steel to have a value of $1,000. Rather, the witness merely wished to show that he had received an offer of $1,000. Thus, because the witness was not attempting to prove "the truth of the matter asserted," his statement was not hearsay. *See* McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 246, at 584–86 (E. Cleary 2d ed. 1972); *see also State v. Gilbert,* 121 N.H. 305, 312–13, 429 A.2d 323, 328–29 (1981).

■ The defendants complain that the steel remaining in Maple Valley's possession is worth more than $1,000. The master's conclusion as to the value of the steel is supported by the evidence, and a reasonable person could have found as he did; therefore, we will not disturb his finding. *See Zimmerman v. Suissevale, Inc.,* 121 N.H. 1051, 1054–55, 438 A.2d 290, 292 (1981).

We have examined the defendants' remaining arguments and find them to be without merit.

*Affirmed.*

All concurred.