Hillsborough
No. 91-435

EDWIN A. MCCABE & a.

v.

LOUIS J. ARCIDY, SR.

December 15, 1993

*The McCabe Group*, of Cambridge, Massachusetts (*Edwin A. McCabe & a.* on the brief, and *Joseph P. Davis III* orally), for plaintiff Edwin A. McCabe.

*Kahn & Brown*, of Nashua (*Kenneth M. Brown* and *John J. LaRivee* on the brief, and *Mr. Brown* orally), for plaintiffs Joseph A. Foistner, Sr., A & F Development Corporation, and Edelweiss Development Corporation.

*Cloutier, Beliveau & Fradette, P.A.*, of Manchester (*Richard E. Fradette* on the brief), and *McDermott, Will & Emery*, of Boston, Massachusetts (*James J. Marcellino* on the brief and orally), for the defendant.

BATCHELDER, J. The defendant Louis J. Arcidy, Sr., appeals from the Superior Court's (*Flynn*, J.) order that he comply with the terms of a written fee agreement, which he signed as guarantor. We affirm.

In October 1990, Edwin McCabe, a Massachusetts attorney, was contacted by Joseph Foistner and Louis Arcidy concerning possible legal representation. Foistner had litigation pending in the Hillsborough County Superior Court, on his own behalf and on behalf of A & F Development Corporation and Edelweiss Development Corporation, against First New Hampshire Mortgage Corporation and Don Wheeler Construction, Inc., based on claims of lender liability. The lawsuit had been filed by the New Hampshire firm of Wiggin & Nourie, and the plaintiffs were seeking new counsel.

During the following weeks, McCabe met with Foistner and Arcidy several times and communicated with them by telephone and in writing. Discussions concerning a fee agreement revealed that Foistner and the two corporations were insolvent and thus unable to pay attorney's fees and that McCabe was unwilling to accept the case on a purely contingent fee arrangement. Arcidy, who was a fifty percent shareholder in the two corporations, presented himself as an individual of substantial wealth and expressed his willingness to guarantee the payment of McCabe's fees and expenses.

On December 4, 1990, McCabe and Foistner entered into a fee agreement. The agreement provided that the clients, Foistner and the two corporations, were to pay a $25,000 retainer and, commencing January 1, 1991, and continuing to October 1, 1991 or the completion of the lawsuit, whichever occurred first, McCabe's invoices. Thereafter, McCabe would be entitled to twenty-five percent of the clients' net recovery from the prosecution, or thirty percent in the event of an appeal from judgment entered after trial. "Net recovery" was defined in the agreement as the amount of any judgment or settlement, less the aggregate amount of all payments made by the clients to reimburse McCabe for fees and expenses. In addition, McCabe was given the option to purchase for $10.00 a 22.4 acre parcel of land in New Hampshire with a stated value of $150,000. The clients were entitled to a further credit for that value in the event the option to purchase was exercised. The agreement was signed by Foistner, on his own behalf and as president of the two corporations, and by McCabe. Arcidy signed the agreement underneath the statement that "[p]erformance by the Clients of their obligations under the terms of this Fee Agreement it [*sic*] is hereby guaranteed."

Arcidy thereafter paid the initial $25,000 retainer and $25,000 fee payments in the months of January, March, and April 1991. McCabe

agreed to an extension of time for the February payment. In addition, Arcidy reimbursed McCabe for expenses through April 1991. In May 1991, however, Arcidy ceased making payments. Subsequently, McCabe, joined by Foistner and the two corporations, filed a petition for injunctive and declaratory relief, seeking enforcement of the written fee agreement. Following a two-day trial, the court denied the request for injunctive relief based on a finding that McCabe had failed to show irreparable harm. The court, however, issued an order that Arcidy pay McCabe $138,622.78 for fees and expenses incurred up to the time of trial in this case and that Arcidy comply with the provisions of the fee agreement.

Arcidy raises many issues on appeal. Although he argues that this court ought to reach conclusions different from those of the trial court, our role is not to undertake *de novo* review. Findings of fact by a trial court are binding on us unless they are not supported by the evidence or are erroneous as a matter of law. *K & P, Inc. v. Town of Plaistow*, 133 N.H. 283, 289, 575 A.2d 804, 808 (1990). An integral part of the process of decision-making includes resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given to testimony. We defer to the trial court's judgment on such issues. *See Ballou v. Ballou*, 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978).

Arcidy argues first that the trial court erred in finding that he was not McCabe's client. He also contends that McCabe had "the highest level of fiduciary duties" to disclose the difference in legal effect between signing the fee agreement as a guarantor rather than as a client, to inform Arcidy that he was not a client, and to advise Arcidy that he should seek independent counsel regarding the negotiation and execution of the fee agreement.

The trial court's order states:

> "After considering the conflicting testimony on this issue the Court finds that the defendant was never a client of McCabe and, further, that McCabe met his professional responsibility toward the defendant. It should also be kept in mind that McCabe was dealing with an astute, experienced and very successful business man in the person of Arcidy."

The court denied the defendant's requested finding that "McCabe never explained to Arcidy the difference between signing the Fee Agreement as a guarantor rather than as a client." In addition, the court found that McCabe had no obligation to inform Arcidy that a client may discharge his attorney at any time, with or without cause,

or that Arcidy should seek independent counsel before signing the fee agreement. The facts of this case support the trial court's conclusions.

■■ An attorney-client relationship "is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance." *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977). The burden of establishing the existence of the attorney-client relationship rests on the party who alleges such fact, *see Matter of Grand Jury Subpoenas, Etc.*, 451 F. Supp. 969, 971 (E.D.N.Y. 1978), and its existence is predicated on the circumstances of each case. *Matter of Lieber*, 442 A.2d 153, 156 (D.C. 1982); *Chavez v. State*, 604 P.2d 1341, 1346 (Wyo. 1979), *cert. denied*, 446 U.S. 984 (1980). "That burden is not of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any such spurious claims could never be exposed." *Matter of Grand Jury Subpoenas, Etc.*, 451 F. Supp. at 971 (quotation omitted).

Consultation between an attorney and another person constitutes the fundamental basis of an attorney-client relationship. A critical element of that consultation, however, is that the person initiating it do so with the intent of seeking legal advice from the attorney. *See United States v. United Shoe Machinery Corporation*, 89 F. Supp. 357, 358 (D. Mass. 1950). The evidence in this case offers no basis for concluding that when Arcidy consulted McCabe he did so to further his individual personal interest; there is only evidence that McCabe was retained to represent Foistner and the two corporations. *See United States v. Stern*, 511 F.2d 1364, 1368 (2d Cir.), *cert. denied*, 423 U.S. 829 (1975); *Matter of Grand Jury Subpoenas, Etc.*, 451 F. Supp. at 971. Arcidy was not a party to the lender liability suit and did not have a claim involved in the litigation. McCabe testified at trial that:

> "Mr. Arcidy was told from the outset who the clients were in this matter. Mr. Arcidy indeed repeatedly told me that this was Joe Foistner's case, that he was the one who was going to be making the decisions and Mr. Arcidy was simply providing the funding for it; and obviously, would enjoy the fruits of a successful prosecution of the claims, but that this was Mr. Foistner's case. There was never any question that was raised until after payment stopped in May that Mr. Arcidy purported to be a client of mine."

When asked on cross-examination whether "prior to Mr. Arcidy signing the fee agreement, [McCabe] explain[ed] to him the difference, the legal difference, between his signing as a client as opposed to a guarantor," McCabe answered "yes." Indeed, if Arcidy was a client there would have been no need for him to guarantee the fee agreement because presumably he would have been obligated to pay his lawyer's fee.

■ We disagree with Arcidy's argument that it was reasonable for him to believe he was a client due to his status as a fifty percent shareholder in the plaintiff corporations. "A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." N.H. R. PROF. CONDUCT 1.13(a); *see Egan v. McNamara*, 467 A.2d 733, 738 (D.C. 1983). Absent evidence that a corporation's attorney furnished legal advice to a shareholder, *see Professional Service Industries, Inc. v. Kimbrell*, 758 F. Supp. 676, 681 (D. Kan. 1991), the attorney is not the representative of the corporation's shareholders simply because the attorney's actions on its behalf also benefit the shareholders. *Skarbrevik v. Cohen, England & Whitfield*, 282 Cal. Rptr. 627, 634 (Ct. App. 1991).

■ In addition, we disagree that the fact that, unbeknownst to McCabe, Arcidy was a fifty percent assignee of any recovery in the lender liability action was sufficient for Arcidy to reasonably believe he was a client. The attorney-client relationship is a contractual relationship and, like any other relation based on contract, it requires a meeting of the minds. *See* 17A AM. JUR. 2D *Contracts* § 26 (1991). If, as Arcidy now argues, the fact that Foistner assigned to him fifty percent of all right, title, and interest in the lender liability lawsuit supports a reasonable belief that he was a client, Arcidy was obligated to manifest his state of mind to McCabe. Arcidy testified at trial, however, that he never informed McCabe about the existence of the assignment, and McCabe testified that he learned of it "a couple of weeks" before the trial in this case. Under these circumstances, it was not reasonable for Arcidy to believe McCabe was his attorney.

Next, we review the defendant's argument that the trial court erred when it reformed the fee agreement. Evidence before the trial court established that following a series of negotiations, McCabe proposed a fee arrangement whereby, *inter alia*, he would be paid a $25,000 retainer and a flat fee of $250,000 to be paid in ten equal monthly installments, plus his expenses. Those expenses included the cost of local counsel. A draft of this agreement was signed by all

the parties except McCabe, who proposed some further revisions. The draft agreement incorporating McCabe's revisions was then retyped by Arcidy's secretary. In the retyping, the language providing for a flat fee of $250,000 to be paid in ten equal monthly installments of $25,000 was omitted. McCabe read only those portions of the retyped document to which he had made changes and thus did not notice the omission prior to all the parties signing the agreement.

The trial court found that the fee agreement as signed did not reflect the agreement of the parties due to a mutual mistake. In addition, the court found that

> "there was clear and convincing evidence that: (1) there was an actual agreement between the parties and that agreement, in pertinent part, was that, in addition to the $25,000 retainer, McCabe was to be paid a fee of $250,000.00 payable in equal monthly installments commencing January 1, 1991, and continuing through October 1991; that there was an agreement to put that Agreement in writing and there was a variance between the prior agreement and the language in paragraph 4.0 of the Agreement."

Accordingly, the court reformed the agreement to "reflect the intention of the parties as above stated." The court further found that "the parties understood that the flat fee was for McCabe's legal services and that 'expenses' would include the cost of local counsel."

Arcidy argues that the trial court erred in determining that there was clear and convincing evidence of an actual fee agreement sufficient to support reformation. He contends that he and McCabe never came to a meeting of the minds as to the substance of the fee agreement and thus the agreement is void based on a mutual mistake of fact. He bases most of this argument on his testimony that he believed that he would be paying a reasonable fee based on reasonable hourly rates up to a limit of $25,000 a month and that McCabe would pay local counsel.

■■ "The law is well settled in this jurisdiction that reformation may be granted . . . where the instrument fails to express the intention which the parties had in making the contract which it purports to contain" and that "parol evidence of mistake in reduction of the agreement of the parties to writing may be received, not for the purpose of varying the written instrument, but for the purpose of establishing the mistake and correcting the instrument." *Gagnon v. Pronovost*, 97 N.H. 58, 60, 80 A.2d 381, 383 (1951) (quotation and citations omitted). It is also settled that "reformation will only be

granted when the evidence is *clear* and *convincing* that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing and (3) there is a variance between the prior agreement and the writing." *Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 237, 401 A.2d 201, 204 (1979). "The facts that the evidence [is] conflicting and solution of the problem difficult do not bar the relief sought." *Hould v. Company*, 83 N.H. 474, 475, 144 A. 261, 262 (1929).

The record indicates that the trial court applied the correct legal standard and that the evidence supports a finding of mutual mistake. Testimony from McCabe and Foistner establishes that the parties orally agreed to a fixed fee payable in ten equal monthly installments of $25,000, in addition to the cost of local counsel, and that a prior draft incorporating such agreement was signed by Arcidy. The record also shows that Arcidy made payments in accordance with those terms for three months. That there was conflicting testimony as to the parties' understanding does not establish that there was no meeting of the minds. As the trial court stated in its order, it was "unpersuaded by Arcidy's testimony that McCabe's charges would only go up to a maximum of $25,000.00 per month based on reasonable hourly rates." "[T]he credibility of witnesses and the weight to be given evidence are questions to be determined by the trial court." *Grabowski v. Grabowski*, 120 N.H. 745, 749, 422 A.2d 1040, 1043 (1980). "The effect of [the trial court's finding as to the parties' agreement] . . . is not defeated or lessened because it was reached after a consideration of conflicting testimony." *Hould v. Company*, 83 N.H. at 475, 144 A. at 262.

We turn now to Arcidy's argument that the fee agreement must be struck down. In support Arcidy contends that McCabe is required, as a matter of law, to prove the fair and reasonable value of his services actually rendered and not simply that the agreement providing for such services is not unreasonable. In addition, he contends that the trial court erred in finding that the fee agreement was reasonable on its face. We disagree.

This dispute is not between an attorney and his client. We review Arcidy's claim that the fee agreement is unreasonable, however, under the general principle of contract law that a guarantor "can defend an action brought by the creditor on a contract between the creditor and the principal" on grounds that the contract is unenforceable. 74 AM. JUR. 2D *Suretyship* § 113 (1974).

Although contracts for attorneys' services generally "stand on the same ground and are governed by the same rules as other

similar contracts for services," *Markarian v. Bartis*, 89 N.H. 370, 372, 199 A. 573, 575 (1938), "[f]ee contracts between attorney and client are a subject of special interest and concern to the courts." *Terzis v. Estate of Whalen*, 126 N.H. 88, 92, 489 A.2d 608, 611 (1985) (quotation omitted). Accordingly, an attorney may not charge a fee that is unreasonable. The reasonableness of a fee is determined based on an examination of a variety of factors which include:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) the fee customarily charged in the locality for similar legal services.

(4) the amount involved and the results obtained.

(5) the time limitations imposed by the client or by the circumstances.

(6) the nature and length of the professional relationship with the client.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

*In re Estate of Rolfe*, 136 N.H. 294, 299, 615 A.2d 625, 628-29 (1992) (quotation omitted); *see Couture v. Mammoth Groceries, Inc.*, 117 N.H. 294, 296, 371 A.2d 1184, 1186 (1977). The fairness of the fee agreement should be determined with reference to the time when the agreement was made. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 875 (9th Cir.), *cert. denied*, 444 U.S. 981 (1979). There can be no rigid, precise measure of reasonableness, however, because the weight accorded each factor depends on the circumstances of each particular case.

Arcidy argues initially that the trial court failed to consider whether the fee agreed to was fixed or contingent and that that failure is reversible error. The court's order, however, expressly recognizes that the fee combines both a fixed fee and a contingent percentage award. In fact, Arcidy's expert witness testified at trial that such mixed fee arrangements are used in New Hampshire. Simply because an agreement combines two different forms of fee calculation does not render the agreement unreasonable. *Boston & Maine v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 897 (1st Cir. 1985).

The trial court applied the factors cited above to determine the reasonableness of the fee agreement and found its terms supported by a proper factual showing. Based on the evidence presented the trial court stated in its order:

> "After considering the testimony of the expert witnesses, the complexity of the case, the claim of between 8 and 20 million dollars in the underlying suit, the need for an attorney who has the specialized knowledge and experience to handle such a case, and McCabe's national reputation in the field of lender liability litigation, the Court finds and rules that McCabe has met his burden of proving that the fee Agreement is fair and reasonable, and that the fees were guaranteed by Arcidy with full knowledge of his legal rights regarding the Agreement."

The parties to this fee agreement were able fully to appreciate its implications, to make an informed decision about the reasonableness of the fee, and to decide whether or not to retain McCabe. The contract was entered into prior to McCabe undertaking representation and, apparently, with considerable preliminary discussion and negotiation. *Cf. Terzis v. Estate of Whalen*, 126 N.H. at 92, 489 A.2d at 611–12. "This is not a case where one party took advantage of another's ignorance, exerted superior bargaining power, or disguised unfair terms in small print." *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d at 875.

Arcidy's argument that the fee agreement must be set aside because McCabe failed to prove the fair and reasonable value of the services rendered is without merit. McCabe is not seeking to recover in quantum meruit the reasonable value of his services. *See Adkin Plumbing v. Harwell*, 135 N.H. 465, 467, 606 A.2d 802, 804 (1992). Calculation of an attorney's fee based on the number of reasonable hours worked multiplied by a reasonable hourly rate "is not the sole benchmark for measuring the reasonableness of any and all attorney fees." *Boston & Maine*, 778 F.2d at 895. "There exist, after all, other permissible fee arrangements under which attorneys are retained, especially in certain legal specialties." *Id.* Accordingly, we affirm the trial court's ruling that McCabe met his burden of proving that the fee agreement is fair and reasonable.

Arcidy also contends that the trial court's "order of specific performance cannot be reconciled with its . . . determination that there was no irreparable injury" because McCabe had available to him an adequate remedy at law. We see no inconsistency in the relief

ordered by the court. Plaintiffs filed a petition for injunctive and declaratory relief. The request for injunctive relief was denied by the court at the close of the trial. Subsequently the court ordered reformation of the fee agreement, declared the parties' rights and obligations under it, and ordered Arcidy to pay what was due and what was to become due under the fee agreement. The court's order was in accord with the "broad remedy" of declaratory relief. *Portsmouth Hospital v. Indemnity Ins. Co.*, 109 N.H. 53, 55, 242 A.2d 398, 400 (1968); *see Radkay v. Confalone*, 133 N.H. 294, 296–97, 575 A.2d 355, 357 (1990).

The seventh issue raised by Arcidy is that the trial court erred when it determined that it need not consider whether an amendment to the fee agreement discharged Arcidy's obligations. Arcidy claims that the execution of an amendment to the fee agreement discharged him from his obligations as guarantor because he did not sign the amendment and because the amendment materially altered the terms of the fee agreement. "All courts agree that a material alteration in the principal contract, when that alteration is made after the execution of the guaranty contract *and without the consent of the guarantor*, discharges the guarantor if the material alteration injures the interest of the guarantor." 38 Am. Jur. 2d *Guaranty* § 81 (1968) (emphasis added); *see Maple Valley Ski Area, Inc. v. Shannon*, 122 N.H. 576, 578, 448 A.2d 379, 381 (1982).

Testimony at trial established that Foistner, at the request of Arcidy, asked McCabe to defer the February 1991 payment in return for which Foistner and Arcidy would agree to an amendment to the fee agreement extending by one month the fee payments to be made. McCabe agreed, and he and Foistner signed an amendment to that effect. Arcidy never signed the amendment despite indicating that he would do so. Because Arcidy requested the amendment, the fact that he never signed it will not result in the discharge of his obligations. Furthermore, because the fee agreement at issue has been reformed to reflect the true agreement reached by the parties, Arcidy's obligation has not been materially altered by any later amendments. His obligation is that to which he initially agreed.

Next, Arcidy argues that the trial court impermissibly relied on a prior draft of the fee agreement, which was marked for identification but not admitted into evidence. The fee agreement contains an integration provision which states that the agreement expresses the entire agreement of the parties and that the parties are not relying on any "statements, understandings or representations not expressly

embodied in this Fee agreement." Accordingly, the trial court excluded as evidence a prior draft of the agreement. The defendant contends, however, that when the trial court reformed the agreement it "clearly relied on the prior draft" because in its order the "discussion of the terms of the prior draft could only have been obtained from the draft itself; no witness testified as to all the terms of the draft set forth in the [court's] decision."

"Even absent an ambiguity, parol evidence can be admitted in certain instances to prove the existence of terms or conditions not expressed in the writing." *Lapierre v. Cabral*, 122 N.H. 301, 306, 444 A.2d 522, 525 (1982). Although the court consistently excluded the prior draft of the agreement, there was extensive testimony elicited both on direct and cross-examination which established that due to a mutual mistake the writing did not reflect the agreement of the parties. The record does reflect all the terms of the prior agreement referred to by the court in its decision, and, therefore, the court did not need to rely on the prior draft.

The last claim made by Arcidy is that the trial court erred by admitting oral and documentary evidence that was hearsay. We have considered all of the arguments advanced, and we find no reversible error. *Maple Valley Ski Area, Inc. v. Shannon*, 122 N.H. at 579, 448 A.2d at 381.

We affirm the trial court's order that Arcidy pay McCabe $138,622.78 for fees and expenses incurred up to the time of trial in this case and that Arcidy comply with the provisions of the fee agreement. The record indicates, however, that since the trial court issued its order, attorney's fees and expenses have accrued and may be owing. We remand to the trial court for further proceedings in accordance with this opinion.

*Affirmed and remanded.*

HORTON, J., did not sit; the others concurred.