Belknap
No. 95-850

PIKE INDUSTRIES, INC. & a.

v.

HILTZ CONSTRUCTION, INC.

September 24, 1998

*Sulloway & Hollis*, of Concord (*Warren C. Nighswander* on the brief and orally), for the plaintiffs.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Julie A. Dascoli* on the brief, and *Ms. Dascoli* orally), for the defendant.

THAYER, J. This case arises out of an action for contribution brought by the plaintiffs, Liberty Mutual Insurance Co. and Pike Industries, Inc. (Pike), against Hiltz Construction, Inc. (Hiltz) in which the Superior Court (*Smukler*, J.) ruled in favor of the plaintiffs in the amount of $75,000. Hiltz presents two issues for our review. First, Hiltz argues that the superior court erred by assigning liability based on "theories" allegedly not argued by the plaintiffs, but raised *sua sponte* by the court. Second, Hiltz asserts that the court erred in its computation of the amount of contribution. We affirm.

A personal injury action underlies this case. On March 26, 1991, a dump truck operated by Pike was waiting to enter a dump site operated by Hiltz. Due to muddy conditions at the entrance of the site, a back-up of several trucks had occurred. The trucks waited in the road, blocking the westbound lane to all traffic. The Pike truck, then at the end of the line, proceeded to pass the line of parked trucks and eventually stopped, blocking the entire eastbound lane. Lila Shores, who was driving eastbound, collided head on with the stopped truck.

Shores sued Pike for injuries sustained in that collision. The plaintiffs settled the case by paying Shores $175,000 in exchange for Shores releasing the plaintiffs and Hiltz from all liability. Hiltz was not a party to that action. The plaintiffs then brought the instant action seeking contribution from Hiltz for Hiltz' comparative share of fault in causing the accident.

After a hearing on the merits, the trial court found Shores thirty percent liable, Pike forty percent liable, and Hiltz thirty percent liable for the accident. The court found the settlement entered into between the plaintiffs and Shores to be reasonable. The court calculated that the total value of the case was $250,000. The court reasoned that the settlement amount was consistent with the total value of the case, in light of Shores being thirty percent at fault. Where the settlement was $175,000, the court reasoned that $250,000 would represent a fair estimate of the total value of the case. The court then awarded the plaintiffs $75,000, representing Hiltz' thirty percent share of liability in a case worth $250,000.

The court articulated three reasons for Hiltz' liability. It assigned a ten percent share of responsibility to each rationale or "theory," respectively. Those rationales include: (1) Hiltz failed to recognize the difficulty in entering the dump site and failed to implement any plan as to what the trucks should do; (2) Hiltz' driver caused the initial tie-up by blocking the road; and (3) Hiltz' driver failed to provide traffic control once the tie-up became apparent. Hiltz disputes the validity of the rationales.

On appeal, Hiltz argues that the trial court committed reversible error by raising "theories of liability" not disclosed in pretrial pleadings nor developed by counsel for the plaintiffs. Hiltz also contends that the court applied an improper methodology in calculating damages. We begin by addressing Hiltz' argument regarding the allegedly erroneous "theories of liability."

■ "It is well settled that a defendant is entitled to be informed of the theory on which the plaintiffs are proceeding and the redress that they claim as a result of the defendant's actions." *Morancy v. Morancy*, 134 N.H. 493, 497, 593 A.2d 1158, 1160 (1991) (quotation omitted). New Hampshire maintains a system of notice pleadings. *See Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 536, 517 A.2d 808, 810 (1986). As such, we take a liberal approach to the technical requirements of pleadings. *See* 4 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 211, at 154 (1984); *see also Nat'l Marine Underwriters v. McCormick*, 138 N.H. 6, 8, 634 A.2d 1008, 1010 (1993) (allowing liberal amendments to pleadings to cure technical defects).

■ We will assume that the plaintiffs' pleadings include their writ and, as Hiltz argues, their "summary statement" filed pursuant to Superior Court Rule 62. The plaintiffs' writ states in pertinent part:

[T]he conduct of Hiltz was *itself* negligent and did in fact contribute to the injuries sustained by Ms. Shores in that Hiltz *had control of the dumping site* where the accident occurred and *failed to provide adequate traffic control* as a means of assuring safety at the site, thereby *allowing an obvious dangerous condition to exist* which was a proximate cause of the personal injuries sustained by Ms. Shores
. . . .

(Emphasis added.) The writ alleges that Hiltz had a duty, that it breached that duty, that the breach was the proximate cause of the injuries to Shores, and that the plaintiffs seek contribution for damages arising from those injuries. It also states that Hiltz' failure to provide adequate "traffic control" constitutes a specific detail the plaintiffs will seek to prove. Hiltz, thus, should have had an adequate understanding that the nature of the plaintiffs' dispute involved negligence associated with the operation of the dump site. No reasonable reading of the writ could result in the conclusion, as Hiltz argues, that the *only* purported duty owed by Hiltz was to provide flag-holding personnel at the site. The writ need not do more than state the general character of the action and put both court and counsel on notice of the nature of the controversy. *Cf. Morency v. Plourde*, 96 N.H. 344, 346, 76 A.2d 791, 792 (1950) (stating that in New Hampshire pleading need merely put court and counsel on notice of dispute). We hold that Pike's writ satisfies our liberal standard for pleadings.

▮ Hiltz argues that, in addition to plaintiffs' writ, plaintiffs' summary statement filed pursuant to Superior Court Rule 62 failed to provide sufficient notice of the claim. A summary statement serves merely to "apprise the court of the nature of the claims, defenses, and legal issues likely to arise." SUPER. CT. R. 62. A summary statement need not contain as much detail as a "pre-trial statement." *See id.* A party files the former prior to discovery and the latter toward the end of the discovery process. *See id.* Even assuming *arguendo* that the summary statement is part of the pleadings, the plaintiffs' summary statement *does* allude to aspects of the three rationales employed by the court. It notes that the accident occurred at a site entirely "controlled by Hiltz." Thus, Hiltz could anticipate liability premised on a breach of supervisory duty or vicarious liability. The summary statement also includes reference to a "dangerous condition caused by the line of dump trucks" and to a lack of a "traffic controller." This should have alerted Hiltz that the line of trucks bore some causal connection to

the accident and that Hiltz should have used some form of traffic control measure. The trial court properly refused to rule that the plaintiffs' summary statement violated Rule 62 or was otherwise deficient.

Hiltz further contends that the plaintiffs introduced no evidence that would allow the court to have found liability under the three rationales. We disagree. The record discloses instances where evidence came in supporting the court's articulated rationales. We review the evidence to determine whether it supports the trial court's findings. In reviewing the record, we defer to the trial court's judgment regarding such issues as the weight given the evidence. *See McCabe v. Arcidy*, 138 N.H. 20, 24, 635 A.2d 446, 449 (1993).

First, with respect to the failure to recognize the difficulty in entering the dump site and implementing a plan for dealing with it, the court did hear evidence on this point. Jeffrey Hiltz, president of Hiltz Construction, testified that he was aware of recurrent muddy conditions at the site that precluded trucks from entering. Pike's attorney questioned him as follows:

> Q: [Y]ou had some problems with trucks getting stuck about one out of every 10 days through that winter, didn't you?
> A: Yeah. That's correct. Yes.
>
> . . . .
>
> Consequently you would get a freeze/thaw situation. When that would occur with the glacial till it creates a slime and it's difficult for the trucks to travel through.
>
> What we would do is we would work particular areas of the pit to try to stay out of the sun, stay into the shade, and when it got to the point where it wasn't profitable for us to do that we would actually shut the job down.

The plaintiffs also introduced evidence that a Pike driver, Richard Dionne, and other drivers were aware of the muddy condition at the dump site. Dionne testified without objection that another driver told him, "We can't get in here because it was all mud, and you'll have to go around us." Keith Brazier, a Hiltz driver, testified that Hiltz "had a dozer in there pushing the mud around trying to get it opened up so we could get in." The plaintiffs introduced evidence of the muddy condition giving rise to the situation that caused the accident. Evidence indicated that Hiltz' plan for dealing with such a situation contemplated shutting down operations when ingress to

the site was not feasible. Additional evidence indicated that Hiltz did not activate its plan. The trial court could have concluded that Hiltz' failure to address this known problem on the day in question constituted negligence. Hiltz should have known, based on the evidence at trial, that the plaintiffs put the supervision of the site, and the obligation to recognize the hazard, in play. Further, Hiltz should have known that because it did not in fact shut down operations, it failed to implement a "plan." The evidence, therefore, supports the trial court's first rationale. *Cf. Sleeper v. Company*, 100 N.H. 158, 160, 121 A.2d 799, 801 (1956) (holding that trial and pretrial evidence supported negligence claim, not thoroughly alleged in plaintiff's writ, so that court properly denied motions for nonsuit and directed verdict).

Second, evidence supported the rationale that Hiltz' driver caused the initial tie-up by blocking the road, thereby creating a hazard. Gideon Cahen, an expert for the plaintiffs, testified that "the contractor should have been aware of *the tie-up of construction vehicles* . . . which had made passage to both the general public and construction vehicles *unsafe*." Hiltz did not object. Further, Brazier testified that he stopped and blocked traffic, causing a back-up of trucks. The plaintiffs' attorney questioned him as follows:

> Q: And how did it happen that you were sitting there in that truck, or that your truck was sitting there?
> A: I was unable to get into the dump site on account of mud. We'd had rain the night before and with that we had a lot of mud. We weren't able to get in to dump. So we was [*sic*] parked there on the right side of the road, off the road as far as we could possibly get.
> Q: How far could you get off the road?
> A: I'd say maybe one set of the duals [wheels] off the pavement at the very most.
>     . . . .
> Q: Do you know how long you had been sitting there not able to go into the site?
>     . . . .
> A: Yes, it could have even been a little longer than an hour.

The trial court could have reasonably concluded that this evidence of stopping and blocking the lane constituted negligence. *See McCabe*, 138 N.H. at 24, 635 A.2d at 449 (1993); *see also Sleeper*, 100 N.H. at 160, 121 A.2d at 802. We see no error in the trial court's inclusion of this rationale.

Third, the trial court found that Hiltz' driver failed to react adequately to the situation by providing "some kind of traffic direction." This rationale seems so similar to the theory of liability conceded by Hiltz to be at issue, and the evidence so prevalent, that we need not address the argument that neither the pleadings nor the evidence at trial supported this rationale. The trial was replete with evidence that traffic controls should have been implemented by Hiltz. The trial court did not err in finding that Hiltz' driver, specifically, should have implemented traffic control measures. *Cf. Richard v. Company*, 79 N.H. 380, 382, 109 A. 88, 90 (1920) (declaring employer responsible for negligent behavior of employee done in scope of employment).

Turning now to Hiltz' argument regarding the computation of damages, we discern no error in the trial court's methodology. We begin our analysis with a discussion of RSA 507:7-f (1997). That statute, entitled "Contribution Among Tortfeasors," states in pertinent part: "The basis for contribution is each person's share of the obligation, including the proportionate share of the claimant at fault as determined in accordance with the provisions of RSA 507:7-e." RSA 507:7-f, I. Paragraph II of RSA 507:7-f states: "Contribution is not available to a person who enters into a settlement with a claimant unless the settlement extinguishes the liability of the person from whom contribution is sought, and then only to the extent that *the amount paid in settlement was reasonable*." (Emphasis added.)

▉ Questions of statutory interpretation present this court with questions of law of which we are the final arbiter. *See Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 590-91, 688 A.2d 565, 566-67 (1997); *Pope v. Town of Hinsdale*, 137 N.H. 233, 237, 624 A.2d 1360, 1362 (1993). We begin by examining the statutory language itself. *Cheever*, 141 N.H. at 591, 688 A.2d at 567.

▉ Hiltz argues that the term "obligation" in RSA 507:7-f, I, in the context of parties who have entered into settlements, must refer to the settlement amount. The trial court considered the settlement amount of $175,000, but calculated that, because Lila Shores was thirty percent at fault, the total "obligation" was $250,000. The settlement, thus, represented $250,000, reduced in light of Shores having been thirty percent at fault. The trial court also considered Shores' medical expenses and the extent of her injuries and concluded that the amount paid in settlement was reasonable. *See* RSA 507:7-f, II. We cannot say that the court erred in its finding of reasonableness. *Cf. Brewer v. Fibreboard Corp.*, 901 P.2d 297, 303

(Wash. 1995) (articulating that trial court's finding of reasonableness will not be disturbed when supported by substantial evidence); *Schmidt v. Cornerstone Investments*, 795 P.2d 1143, 1147 (Wash. 1990).

Having decided that the amount paid in settlement was reasonable, and having assigned fault to the parties, *cf. Young v. Clogston*, 127 N.H. 340, 342, 499 A.2d 1002, 1009 (1985) (noting that determinations of comparative negligence reside with the fact finder), the trial court properly reasoned that the settlement amount accounted for Shores' share of fault and was reduced accordingly. Thus, the logical result is that the full "obligation" was $250,000.

Hiltz was thirty percent at fault for the accident. Hiltz' thirty percent share of the $250,000 obligation is $75,000, the amount of the judgment. The trial court's decision appears eminently reasonable and consistent with RSA 507:7-f.

*Affirmed.*

BRODERICK, J., sat but did not participate in the decision; the others concurred.