Fornaro v. Gannon et al.          CV-00-189-B       05/16/03
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE


Rex Fornaro

     v.                              Civil No. 00-189-B
                                     Opinion No. 2003 DNH 080
William S. Gannon, Esquire
Wadleigh, Starr & Peters, PLLC


                     MEMORANDUM AND ORDER

     Rex Fornaro brings this *pro se* legal malpractice action

against William S. Gannon, Esq. and Wadleigh, Starr & Peters,

P.L.L.C. (the "Wadleigh firm"), a law firm located in Manchester,

New Hampshire.  Fornaro alleges the defendants committed legal

malpractice in the litigation of an employment claim against his

former employer.  Before me is defendants' motion for summary

judgment. (Doc. No. 37)

     Defendants argue that they are entitled to summary judgment

because Fornaro cannot demonstrate that he would have been

successful in his underlying claim but for defendants' alleged

negligence.  I agree.  Accordingly, I grant defendants' motion.

## I.  BACKGROUND[1]

## A.  Facts Related to Fornaro's Termination Claim

Fornaro worked as a flight dispatcher for Business Express ("BEX"), an airline carrier, from January 1993 through February 28, 1994.  He worked at BEX's headquarters in Westport, Connecticut

On January 24, 1994, Fornaro made an anonymous complaint to the Federal Aviation Administration's ("FAA") Aviation Safety Hotline.  His complaint consisted of "non-specific" information that BEX was understaffed and a claim that scheduling of flight crews was an issue.  Ex. J. to Defs' Mot. for Summ. J.  The FAA memorandum detailing his complaint states that the safety hotline took no action on his complaint because "the caller" provided only "non-specific" information.  Id.

Fornaro's personnel file at BEX contains multiple reports of tardiness.  Fornaro's supervisors, Mary DePaola and Wayne Heller, both spoke with him about his tardiness and entries reflecting these discussions were made in Fornaro's personnel file.  On

---

[1] The background facts are presented in the light most favorable to the non-movant, Fornaro.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

-2-

January 4, 1994, prior to Fornaro's FAA complaint, Heller told Fornaro that he would be terminated the next time he was late for work. BEX's attendance log for the week of February 29, 1994 reflects that Fornaro was late for work on February 25, 26, 27 and 28, 1994. Fornaro was terminated on February 29, 1994.

Fornaro's supervisors both contend that they did not learn of his FAA complaint until several years after he was terminated. Fornaro claims, however, that two days after he made his complaint, he overheard a fellow BEX employee, Tom DeMarco, comment that BEX was aware of a pending FAA investigation against the company.

## B.   Litigation of Underlying Claim

Fornaro subsequently retained Richard Franchi, an attorney in Connecticut, to represent him in a suit against BEX. Franchi sued BEX in Connecticut Superior Court on Fornaro's behalf on October 9, 1995. The complaint in the Connecticut action included a common law wrongful termination claim, a claim based on Connecticut's Whistleblower Statute, Conn. Gen. Stat. § 31-51 (1997 & Supp. 2002) and a claim based on a Connecticut statute prohibiting the discipline or discharge of employees on account of employee's exercise of certain constitutional rights, Conn.

Gen. Stat. § 31-51q (1997 & Supp. 2002). BEX subsequently filed for bankruptcy protection in the United States Bankruptcy Court for the District of New Hampshire. In February 1996, Franchi filed a $199,856.62 proof of claim in the bankruptcy court proceeding based on the same legal theories that formed the basis of Fornaro's Connecticut lawsuit.

At Fornaro's request, Attorney William Gannon filed an appearance in the bankruptcy court proceeding on June 4, 1996. On April 15, 1997, the bankruptcy court issued an order confirming a reorganization plan for BEX under which its assets were to be sold and the proceeds distributed to creditors according to their priority. In May 1997, the Official Creditors' Committee for BEX filed an objection to Fornaro's claim. The objection was served on Franchi, who subsequently filed a response on June 4, 1997. After Franchi filed his response, Fornaro informed Gannon that he wanted Gannon, instead of Franchi, to be his lead counsel in the bankruptcy proceeding.

The Creditors' Committee subsequently offered Fornaro a $175,000 allowance for his claim. Although Gannon repeatedly recommended that Fornaro accept the allowance, see Ex. H, (a)-(f)

-4-

of Defs' Mot. for Summ. J., he refused because the offer did not require BEX to purge several disciplinary reports from his personnel files.

Fornaro's claim was tried before Judge Vaughn in the bankruptcy court on February 22 and 23, 1999. In a detailed order dated February 11, 2000, Judge Vaughn rejected all three of Fornaro's causes of action because he determined that BEX had legitimately terminated Fornaro for tardiness. See In re Business Express, Inc v. Fornaro, 2000 WL 33679420, No. 96-10130-MWV (Bankr. D.N.H.). In reaching this conclusion, Judge Vaughn also necessarily rejected Fornaro's claim that BEX terminated him because he had filed a complaint with the FAA. See id.

## C. Malpractice Claim

Fornaro filed this action in April 2000. He claims that Gannon and the Wadleigh firm committed malpractice by failing to: (1) timely amend the proof of claim in the bankruptcy proceeding; (2) retain an expert to quantify Fornaro's damages; (3) retain an expert to demonstrate that his personnel file had been falsified; (4) take depositions and retain experts to rebut allegedly false testimony; (5) call witnesses to demonstrate that Fornaro was

fired in an act of retaliation; and (6) present sufficient evidence of retaliation.

Fornaro retained legal malpractice trial experts, David Scholl and Martin Margulies, for purpose of identifying the appropriate standard of care, breaches of that standard, and the effect that the breaches had on the bankruptcy proceeding. Margulies and Scholl, in separate reports, identified evidence that they claim either should have been offered in the bankruptcy proceeding or at least "investigated" by Gannon. This evidence consisted of: (1) Fornaro's secretly taped telephone conversations with his supervisor Heller, and with John O'Brien, BEX's vice president of flight operations, the day after Fornaro's complaint to the FAA; (2) Fornaro's secretly taped telephone conversation with DeMarco and Joe Costa, the FAA inspector who oversaw BEX at the time of Fornaro's complaint; (3) testimony of Costa, O'Brien, DeMarco; (4) a February 1995 letter from Tom Huettner, an FAA official, stating that Fornaro's FAA complaint had been passed on to the regional FAA office; (5) a letter dated February 15, 1995 from Attorney Franchi to the president of BEX discussing Fornaro's FAA complaint; and (6) testimony of an aviation expert, Kit Darby, challenging certain

disciplinary reports in Fornaro's personnel file related to his job performance, but not his tardiness. Ex. M to Pls' Obj. to Defs' Mot. for Summ. J.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996)(citations omitted).

Once the moving party carries its burden, the burden shifts to the nonmoving party to "produce evidence on which a reasonable

finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). If the non-moving party provides "evidence that is merely colorable, or is not significantly probative," summary judgment should be granted. Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 249-50) (internal quotation marks omitted). Moreover, Fornaro is not freed from the obligation to comply with procedural rules merely because he is proceeding pro se. See Ruiz Rivera v. Riley, 209 F.3d 24, 27 n.2 (1st Cir. 2000).

### III. ANALYSIS

A plaintiff in a legal malpractice case must prove that: (1) an attorney-client relationship existed between the plaintiff and his attorney; (2) a breach of that duty occurred; and (3) compensable harm was caused by the breach. Wong v. Ekberg, 148 N.H. 369, 373 (2002) (citing Mahoney v. Shaheen, Cappiello, Stein & Gordon, 143 N.H. 491, 495-98 (1999) (emphasis added). To

satisfy the causation requirement in a case where the alleged malpractice occurred in connection with a litigated claim, a plaintiff must demonstrate that "but for" the attorney's misconduct, a claim or defense in the underlying action would have been successful. See Fairhaven Textile Corp. v. Sheehan, Phinney, Bass & Green, PA, 695 F.Supp. 71, 75 (D.N.H. 1988). Therefore, if a legal malpractice plaintiff has had the benefit of a full trial on the merits with respect to an underlying claim, the focus of the causation analysis becomes whether the additional evidence, at this stage construed in the light most favorable to the plaintiff, would have produced a different result. See id.; see also Morris v. Getscher, 708 F.2d 1306, 1310-11 (8th Cir. 1983)(court in subsequent malpractice case is not free to redecide issues decided in an underlying trial, instead, the fact finder is limited to deciding whether but for the malpractice, the result in the earlier case would have been different).

Fornaro asserted three claims in the underlying action: (1) wrongful termination;[2] (2) a violation of Conn. Gen. Stat. §

_____

[2]  The Connecticut Supreme Court has recently held that Conn. Gen. Stat. § 31-51m provides the exclusive remedy for

31-51m; and (3) a violation of Conn. Gen. Stat. § 31-51q. All three claims depend upon Fornaro's assertion that BEX discharged him because he had made an anonymous complaint to the FAA rather than, as BEX asserts, because he repeatedly was late for work. See, e.g., Thibodeau v. Design Group One Accountants, LLC, 802 A.2d 731 735-36 (Conn. App. 2002) (wrongful termination); Lafond v. General Physics Services Corp., 50 F.3d 165, 172-74 (2nd Cir. 1995) (Conn. Gen. Stat. § 31-51m); Williams v. Bayer Corp., 982 F. Supp. 120, 123 (D. Conn. 1997) (Conn. Gen. Stat. § 31-51q.). Because Judge Vaughn expressly rejected this assertion in the underlying action, Fornaro cannot prevail unless he can prove that Judge Vaughn would have reached a different conclusion but for his attorneys' malpractice.

The evidence that Fornaro's experts identify does not, by even the most lenient reading, support Fornaro's claim that he was discharged because he complained to the FAA. First, Fornaro's experts argue that DeMarco's testimony and a tape of a

---

employees who are terminated for whistleblowing. See Campbell v. Town of Plymouth, 811 A.2d 243 (Conn. 2002). Nevertheless, I will assume for purposes of analysis that when Fornaro commenced the underlying action, he would have been permitted to assert distinct claims for wrongful termination and a violation of the whistleblower law.

telephone conversation between Fornaro and DeMarco should have been presented in the bankruptcy proceeding. The transcript of the telephone conversation indicates, however, that DeMarco does not remember making any comments regarding a complaint from the FAA to Fornaro while DeMarco was employed by BEX. At most, the transcript demonstrates that, after both DeMarco and Fornaro were no longer employed by BEX, DeMarco "heard" that Heller was being investigated by the FAA. This does nothing to connect Fornaro's anonymous complaint to his termination.

Second, Fornaro's experts allege that Gannon should have offered as evidence taped telephone conversations between Fornaro, Heller, and BEX's vice-president, O'Brien. As the transcripts of these conversations indicate, however, at no point in either conversation was a complaint to the FAA mentioned. While these discussions demonstrate that Fornaro was upset with his schedule at BEX, they do not link him to the FAA complaint.

Third, Fornaro's experts contend that Gannon should have offered the transcript of a taped conversation between Fornaro and Costa, the FAA inspector who oversaw BEX at the time. When read in its entirety, the transcript of this conversation demonstrates nothing more than the fact that Costa was not

certain whether anyone ever passed Fornaro's anonymous complaint on to BEX. The conversation does nothing to bolster Fornaro's causation argument.

Fourth, Fornaro's experts argue that Gannon should have offered a letter dated February 15, 1995 to BEX's president, Brian Bedford, from Attorney Franchi. This letter explains that Fornaro intends to file a wrongful termination suit against BEX. It does not support Fornaro's effort to prove a connection between the FAA complaint and his termination.

Fornaro's experts also argue that Gannon should have introduced a letter from FAA supervisor Huettner to Fornaro. In summary, this letter explains that a copy of Fornaro's complaint was provided to the FAA's New England regional office even though the complaint's "nonspecific nature" did not require a response. This letter does not provide any link between Fornaro's supervisors and the FAA complaint. Indeed, the letter further demonstrates that the FAA never investigated Fornaro's complaint.

After considering the evidence that Fornaro contends should have been offered to support his claims, I am satisfied that he fails to establish that BEX was even aware that one of its employees had made a complaint to the FAA. Because such proof is

vital to Fornaro's malpractice claim, defendants are entitled to summary judgment.[3]

## IV. CONCLUSION

Viewing the record in a light most favorable to Fornaro, he has failed to demonstrate facts sufficient to fulfill the causation requirement of his legal malpractice claim. Accordingly, I grant defendants' motion for summary judgment (Doc. No. 37).[4] The clerk of the court shall enter judgment in favor of the defendant.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

_____

[3] Fornaro's experts also contend that an aviation expert's report demonstrates that non-tardiness related disciplinary reports in Fornaro's personnel file were without merit. Because the aviation expert's report does nothing to call into question Judge Vaughn's finding that BEX terminated Fornaro due to his tardiness, I decline to analyze the merits of the report.

[4] Because Fornaro has not succeeded in calling into question Judge Vaughn's conclusion that Fornaro was terminated for tardiness rather than for filing a complaint with the FAA, I do not consider the merits of his other malpractice claims.

May    , 2003

cc:  Rex Fornaro, pro se
     Michael Lonergan, Esq.