Hillsborough,  
May 1, 1951.  } No. 3997.

CECILE GAGNON *v.* ALVINE PRONOVOST *& a.*

*Chretien & Craig* (*Mr. Chretien* orally), for the plaintiff.

*Cooper, Hall & Cooper* (*Mr. Burt R. Cooper* orally), for the defendants.

DUNCAN, J. The defendants' motion to dismiss was properly denied. The former action was a bill in equity to remove cloud on title and presented the issue of the nature of the interests created in the grantees by the deed in question. *Gagnon* v. *Pronovost*, 96 N. H. 154, 155. The pending action presents the issue of whether by reason of mistake on the part of the scrivener or of the parties to the deed, the deed failed to express their intention and understanding, so that it should now be reformed. The issue of mistake was neither litigated nor determined in the prior action and the judgment there entered is not *res judicata*. Restatement, Judgments, s. 293; *Laconia Nat. Bank* v. *Lavallee*, 96 N. H. 353; *Montville* v. *Hamblin*, 96 N. H. 356, 357. The pending bill is a new and independent action. *Gilcreast* v. *Bartlett*, 74 N. H. 29. The plaintiff originally sought to establish title to the full interest in the conveyed premises. The contention then made was in no way inconsistent with her present contention that a joint tenancy was intended by the conveyance. She has made no election which precludes maintenance of the present action. *Gehlen* v. *Patterson*, 83 N. H. 328; *Ricker* v. *Mathews*, 94 N. H. 313.

The law is well settled in this jurisdiction that reformation may be granted in a proper case where the instrument "fails to express the intention which the parties had in making the contract which it purports to contain." *Minot* v. *Tilton*, 64 N. H. 371, 374; Pom., Eq. Jur. (5th ed.) ss. 304, 845. It is likewise settled that parol evidence of mistake in reduction of the agreement of the parties to writing may be received, not for the purpose of varying the written instrument, but for the purpose of establishing the mistake and correcting the instrument. *McIsaac* v. *McMurray*, 77 N. H. 466, 469, 470; Pom., *supra*, ss. 304, 858-859a. In equitable actions for reformation there prevails "a more stringent rule as to the burden of proof or the weight of the evidence than obtains at law, in order probably to show that in equity the parol evidence rule is recognized and is not to be lightly set aside." *McIsaac* v. *McMurray*, *supra*, 470. Accordingly it is established that to warrant a decree of reformation the "mistake must be made out in the most clear and decided manner, and to the entire satisfaction of the court; and especially must the proofs be clear and convincing, when the mistake is denied in the answer." *Tilton* v. *Tilton*, 9 N. H. 385,

392; *Searles* v. *Churchill*, 69 N. H. 530; *Hould* v. *Company*, 83 N. H. 474.

The decisive issue in the pending action is whether the proof met the required standards so as to warrant the findings and rulings of the Trial Court. Apart from the findings of intention, the findings of fact are sustained by uncontradicted evidence. Thus it appeared and the Court found that the deed was executed on April 10, 1929, and recorded on the following day; that on April 8, 1929, the grantee Letourneau withdrew from his savings account the sum of $1,000, and the grantee Turgeon from two savings accounts belonging to her, a total of $5,000; that shortly after the purchase of the property substantial repairs and alterations were made, and that on June 6, 1929, the grantee Turgeon withdrew from her bank accounts the sum of $1,200; that on April 10, 1929, the two grantees were living together, and had been for some time; that they had no children; that the grantee Letourneau died on April 10, 1937, and thereafter the grantee Turgeon "treated the property as her own"; and that she died on December 13, 1943.

In addition to these facts found by the Trial Court, the evidence also indicated that the grantees continued to live together after April 10, 1929, but were never married to each other; that on April 10, 1929, the grantee Turgeon was fifty-seven years of age and regularly employed in a mill in Manchester; that the grantee Letourneau was sixty years of age, a painter and paper hanger by trade, and employed with some irregularity. It also appeared that following Letourneau's decease the grantee Turgeon continued to live on the premises until her death, and by will made in 1943 devised and bequeathed to the plaintiff "all my real estate and . . . all the contents of my house." She was appointed administratrix of Letourneau's estate upon her own petition describing herself as a creditor, and filed a real estate report and inventory stating that the decedent owned no real estate. The Court found that "some relatives of Jules Letourneau visited the house where his remains were immediately after his decease." The evidence tended to show that one of these relatives was a nephew but none of them were identified as parties defendant in this proceeding.

It appeared from the evidence and the Court found that in settlement of a contest which arose concerning the will of Georgiana Turgeon the plaintiff paid to the decedent's sister the sum of $4,000 "in full for all right or rights of inheritance by [the sister] under [the will]." The evidence tended to show that the deed of April

10, 1929, was drawn by a Notary Public Josephine V. Loring, who was then employed in the office of a real estate broker and was deceased at the time of the trial.

There was no evidence of the consideration paid for the conveyance, no evidence of the understanding or intention of the grantors, and none concerning the understanding or intention of the grantees except as inferences may properly be drawn from facts heretofore stated.

None of the participants in the purchase of the property or in the preparation of the deed testified at the trial. Thus there was no direct evidence of the understanding of the parties to the deed or of the scrivener, or of the intention of any one of them with respect to the creation of a tenancy in common or joint tenancy with survivorship. The evidence was wholly circumstantial. If we may assume that the understanding of the grantors is immaterial, since they presumably intended to convey the fee regardless of how it should be held by the grantees, the issue becomes solely that of the understanding or agreement of the grantees on or before April 10, 1929, as to what should be the nature of their respective interests. *Cf. Franz v. Franz*, 308 Mass. 262.

The price paid for the property was not disclosed by the evidence, nor was its probable worth suggested. Withdrawal of substantial amounts of savings by the grantees two days before the date of the deed might be thought to indicate that the aggregate represented the purchase price of the property. If it may also be inferred that one-sixth of the price was paid by Letourneau and five-sixths by Turgeon, a further inference that they agreed that title should be held so that the survivor would take all is not thereby suggested as a probability. While the grantees lived together, they were not husband and wife, and neither would have an interest in the estate of the other unless the deed should so provide. Their relationship furnished no guide to determination of the probabilities. The former decision establishes that the deed failed to clearly express an intention to create a joint tenancy, and no testimony received in these proceedings served to explain the purpose of the language used there. In *Franz v. Franz, supra,* there was evidence that the grantees instructed their attorney that they were "to have equal shares" in the property conveyed to them. There was' no comparable evidence in this case.

The larger amount was invested by Georgiana Turgeon. Whether she intended that Letourneau should have the benefit of her in-

vestment in the event that she should die first does not appear. Her statements filed in the probate of his estate were in effect allegations that Letourneau had no interest which survived him. If they might be interpreted as a claim on her part that under the deed she succeeded to his interest by survivorship, it cannot be determined with any certainty that the claim resulted from a mutual understanding on the part of the grantees reached fourteen years previously, rather than from a belief which she alone then entertained, or which she later acquired because of advice received upon Letourneau's decease.

Perhaps the major defect in the proof is the absence of any evidence from which the intention or understanding of Letourneau can be determined. Although he had personal estate consisting of his savings account balance in the sum of $315 he left no will. The absence of testamentary disposition of his real estate is as consistent with a similar indifference to a supposed undivided interest in common, as with an understanding that his interest was such as to pass to his co-grantee without a will. It is settled that the language of the deed alone was no "clear" indication of his intention within the meaning of the statute found in R. L., c. 259, s. 17. *Gagnon* v. *Pronovost*, 96 N. H. 154. What was not a clear indication of intention within the statute can no more be a clear indication within the rule relating to reformation. No other evidence of Letourneau's intention appears.

It cannot be found that there was "an agreement actually entered into, but the . . . deed . . . in its written form [did] not express what was really intended by the parties." Pom., *supra, s.* 1376. See also, Restatement, Contracts, *s.* 504; Williston, Contracts (Rev. *ed.*) *s.* 1548. *Cf. McLane* v. *Robinson Co.*, 95 N. H. 447, 449. We conclude that the evidence fails to clearly indicate that each grantee intended survivorship, rather than a tenancy in common with interests proportional to the investment of each. *Cf. Lowell* v. *Lowell*, 185 Ia. 508; *Bittle* v. *Clement* (N. J.), 54 Atl. 138; 14 Am. Jur. 88, *s.* 17.

While "all the presumptions are in favor of the judgment of the trial court," including the presumption that a mistake was found to have been made out "in the most clear and decided manner" (*Chabot* v. *Shiner*, 95 N. H. 252, 255), no basis for indulging in such a presumption is found in this record. Where no direct proof is furnished, and inferences from the indirect proof are "too remote in logic" (*L' Esperance* v. *Sherburne*, 85 N. H. 103, 114), it cannot

well be presumed that the trier could properly find the proof clear and convincing.

"In order to support reformation, the evidence must show that the instrument is not the true expression of the agreement. It must show that the deficiency . . . is the result of a mutual mistake, not merely the mistake of one of the parties. It must show what the true agreement was, and that the minds of the parties actually met thereon." *Swede* v. *Metropolitan Life Ins. Co.*, 94 F. (2d) 124, 125. See also, *Jacobson* v. *Forster*, 138 Neb. 452; *Mathy* v. *Mathy*, 234 Wis. 557; *Cerny* v. *Cerny*, 181 Md. 586. The evidence in this case failed to meet the required standard. The finding and ruling with respect to the intention of the parties and the decree of reformation are therefore set aside, and the plaintiff's bill is dismissed. The defendants' cross petition seeking affirmative relief remains to be disposed of by the Trial Court.

*Case discharged.*

JOHNSTON, C. J., and KENISON, J., dissented: the others concurred.

JOHNSTON, C. J., *dissenting:* The outstanding fact in this case is the use of the phrase "and to the survivors of them" in a clause of the deed that states the payment of the consideration by Jules Letourneau and Georgiana Turgeon. The majority opinion suggests no meaning whatever for these words that a Trial Court might find but brushes them aside. The two Trial Judges who presided at the respective hearings decided that they disclosed an intention of joint tenancy.

The requirement that for reformation evidence must be "clear and convincing" is not a rule of construction that overrides the often announced principle that the intention of the parties should prevail. It is merely an instruction to guide the trier of fact, similar to that of the burden of proof. It points out that mistake, fraud and other grounds for reformation are unusual and that responsible persons do not charge them lightly. When a Trial Court has found mistake or fraud, such finding cannot be set aside unless there was no evidence to sustain the finding or it was against the weight of the evidence or the trial was unfair for some other reason. Here there was evidence from which an intention of joint tenancy could be inferred, and it cannot be said that the Trial

Judge who found such an intention acted without intelligence. No New Hampshire case has been cited in which a finding was set aside on the ground that the evidence was not "clear and convincing."

The question of whether the evidence was "clear and convincing" is not one of law for this court but one of fact for the trial court. All findings necessary to sustain the general finding are implied. *Caldwell* v. *Yeatman*, 91 N. H. 150. "On the contrary all the presumptions are in favor of the judgment of the trial court. 3 Am. Jur., Title: Appeal and Error, *s*. 923. In this case therefore, we must assume that the Court was satisfied that there was a plain mistake clearly made out by satisfactory proof." *Chabot* v. *Shiner*, 95 N. H. 252, 255.

The findings of the Trial Court were warranted by the evidence and its ruling was correct.