Rockingham
No. 79-447

## DORRINE M. GRABOWSKI

### v.

## DANIEL J. GRABOWSKI

November 13, 1980

746

*Concemi & Wight*, of Lawrence, Massachusetts (*Stephen W. Wight* orally), for Dorrine M. Grabowski.

*Edward W. Richards*, of Nashua, by brief and orally, for Daniel J. Grabowski.

KING, J. The questions raised in this appeal are whether the superior court has authority to reform property settlements in marital cases on the basis of mutual mistake and whether the evidence supported such a decree in this case. We answer both questions affirmatively.

The parties were divorced in 1974. Both parties signed "Permanent Stipulations" which were incorporated as part of the decree. Paragraph 4 of the stipulation reads as follows:

> "4. That the equity of each party in the real estate located at 8 Loren Road, Salem, New Hampshire, shall be determined *forthwith*, the Libelee [defendant] to convey his interest to the Libelant, and the Libelant to give a mortgage and note to the Libelee. The Libelee shall receive said equity upon the sale of said real estate or in the event that the Libelant remarries." (Emphasis added.)

Despite this provision, the parties never exchanged the note and mortgage for the defendant's interest in the real estate. The plaintiff continued to reside in the house with the parties' two minor children until her remarriage in April of 1979.

After her remarriage the plaintiff contracted to sell the real estate and requested the defendant to execute a joint deed to the buyer. At that time, the plaintiff indicated that under the terms of paragraph 4, the defendant would receive approximately $5,000, which was one-half of the parties' equity in 1974, while the plaintiff would retain approximately $17,000. The defendant responded that the stipulation did not reflect the parties' agreement, and the defendant demanded one-half the net proceeds from the sale of the real property. Because the parties could not

agree to a mutually acceptable distribution of the proceeds, they placed the fund in escrow pending the outcome of this litigation.

The plaintiff filed a petition for clarification and, shortly thereafter, the defendant filed a petition for declaratory judgment which was treated as an answer to the plaintiff's petition. After a hearing, the Trial Court (*Randall*, J.) found that the parties intended to divide equally the net proceeds from the sale of the real estate and that paragraph 4 of the stipulation should not be enforced due to the parties' mutual mistake in putting their agreement in writing.

The first issue before us is whether courts have the authority to grant reformation of property settlements for mutual mistake. Reformation based on mutual mistake must be distinguished from modification based on changed circumstances. This court has consistently refused to allow modification of property settlements due to a change in circumstances. *See Twardosky v. Twardosky*, 113 N.H. 438, 439, 309 A.2d 217, 217 (1973); *Lawton v. Lawton*, 113 N.H. 429, 431, 309 A.2d 150, 151 (1973); *Mamalis v. Bornovas*, 112 N.H. 423, 429, 297 A.2d 660, 663 (1972); *Douglas v. Douglas*, 109 N.H. 41, 43, 242 A.2d 78, 80 (1968). This rule does not, however, deprive courts of their common-law power to correct their decrees under proper circumstances. *See Erdman v. Erdman*, 115 N.H. 380, 381, 341 A.2d 271, 272 (1975). Thus we have ruled that a decree relating to a property settlement can be modified upon a showing that the parties entered into the stipulation due to fraud, duress, undue influence, deceit, or misrepresentation. *See Durkin v. Durkin*, 119 N.H. 41, 42, 397 A.2d 304, 304 (1979).

It is well established that courts may grant reformation in proper cases where the instrument fails to express the intentions which the parties had in making the contract. *E.g., Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 236–37, 401 A.2d 201, 204 (1979); *Gagnon v. Pronovost*, 97 N.H. 58, 60, 80 A.2d 381, 383 (1951); *Tilton v. Tilton*, 9 N.H. 385, 392 (1838). We see no reason to treat marital decrees incorporating mistakes in property settlements differently in this regard.

The plaintiff argues that the court's determination that the parties were mutually mistaken when they signed the "Permanent Stipulations" lacked adequate support in the record. Courts may grant reformation only when the evidence is clear and convincing that the written instrument does not express the true agreement of the parties. *See, e.g., Erin Food Servs., Inc. v. 688*

*Props., supra* at 237, 401 A.2d at 204; *Gagnon v. Pronovost, supra* at 60, 80 A.2d at 383; J. CALIMARI & J. PERILLO, THE LAW OF CONTRACTS § 9-31 at 312 (2d ed. 1977). Although the plain meaning rule bars consideration of parol evidence to vary or contradict the meaning of a writing, parol evidence may establish that, due to a mutual mistake, the writing does not reflect the agreement of the parties. *Ekco Enterprises, Inc. v. Remi Fortin Constr., Inc.,* 118 N.H. 37, 41–42, 382 A.2d 368, 371 (1978); *Gagnon v. Pronovost, supra* at 60, 80 A.2d at 383. Furthermore, the mere fact that the evidence is conflicting and solution of the problem difficult will not invalidate a finding of mistake if there is evidence which would support it. *Hould v. Company,* 83 N.H. 474, 475, 144 A. 261, 262 (1929). Because there is no reason to believe otherwise, we must assume that the trial court applied the appropriate standard in weighing the evidence. *Chabot v. Shiner,* 95 N.H. 252, 255, 61 A.2d 791, 793 (1948).

█ Review of the testimony reveals ample evidence upon which the court could have found mutual mistake. The defendant testified that the parties intended to divide equally the net proceeds from the sale of the real estate. In support of this contention, the defendant offered testimony of conversations between the parties as late as 1979 in which the plaintiff herself expressed the intent to share net proceeds equally. The defendant also testified that the plaintiff "said to me [defendant] that she was under the same impression that I was in terms of splitting the equity until she had spoken with Mr. Dahlgren's attorney", thus indicating that it was her new husband's attorney who first noticed that paragraph 4 limited the defendant's share of the proceeds to an amount equal to one-half the 1974 equity and entitled the plaintiff to the surplus. That neither party attempted to determine the equity each enjoyed in the property at the time of the divorce until 1979, when the plaintiff obtained the information at the suggestion of her attorney, further supports the defendant's position.

The defendant's evidence revealed that during the five years between the divorce and the sale of the real property, the defendant contributed to the physical maintenance of the house, made the mortgage payments, although admittedly by mutual agreement the defendant deducted the amount of these payments from his support obligations, and paid the insurance premiums. In reasonable perspective these are actions one would not expect from a person whose ultimate interest in the property was permanently established.

Finally, there was evidence that the purpose of paragraph 4 of the stipulation, which was added in rough longhand in substitution for a previously typewritten provision dividing the property equally, was to permit the plaintiff and the parties' children to remain in the house free from the demands of creditors. There was no evidence that paragraph 4 was intended or operated to defraud creditors or that any creditors made claims against the real property. Neither is there any evidence that the defendant failed to pay the more than $10,000 worth of marital debts which he assumed.

While it is true that the plaintiff contested much of this evidence, the credibility of witnesses and the weight to be given evidence are questions to be determined by the trial court. *See Ballou v. Ballou,* 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978).

*The decree of the trial court is affirmed.*

All concurred.