Hillsborough-southern judicial district
No. 97-299

JOANNA F. SOMMERS

v.

JOSEPH F. SOMMERS

July 2, 1999

*Krolikowski, Hobbs & Dionne,* of Nashua (*James B. Hobbs* on the brief and orally), for the plaintiff.

*Gawryl & MacAllister,* of Nashua (*Janine Gawryl* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, Joseph F. Sommers, appeals an order of the Superior Court (*Hampsey,* J.) granting a motion of the

plaintiff, Joanne F. Sommers, to modify the terms of a permanent stipulation entered into by the parties and incorporated in the divorce decree. We reverse in part, vacate in part, and remand.

The parties divorced in January 1995. The stipulation awarded the plaintiff their marital residence "subject to any mortgages or liens." At the time of the divorce, the residence was encumbered by two mortgages, one securing a debt in the amount of $25,000, and the second securing a debt in the amount of $64,000 (second mortgage). Prior to the divorce, the defendant had received a discharge in bankruptcy on the second mortgage. The stipulation required the plaintiff to pay both mortgages. The stipulation also provided that the parties would own the residence as tenants in common, and that it would be placed on the market for sale no later than six months after their youngest child graduated from high school or turned eighteen, whichever occurred last. Upon the sale, the plaintiff would receive two-thirds of the proceeds, and the defendant one-third.

The stipulation further required that the defendant pay $700 per month in alimony. This obligation was to cease, however, upon the plaintiff's remarriage or death, the eighteenth birthday of the parties' youngest child, or when the second mortgage was canceled or paid in full.

The defendant also stipulated that he would pay certain consumer debt obligations of the parties and federal income tax obligations of the plaintiff, and that he would be responsible for his own income taxes. At the time of the divorce, the defendant owed approximately $200,000 to the Internal Revenue Service (IRS). The stipulation awarded the defendant a 1960 "MG" automobile (MG), and provided that title to the car would transfer to the defendant when he paid the consumer debt obligations and the plaintiff's tax obligations.

Subsequent to the divorce, the plaintiff attempted to sell the house. Although the parties had believed at the time of the divorce that the property was worth more than the mortgages, the plaintiff could not sell it for such an amount and took it off the market.

In July 1996, the loan secured by the second mortgage, an "interest-only" loan, became due. The plaintiff testified that she was unaware when she entered into the stipulation that the loan would become due. She worked out an agreement with the bank to pay the debt in installments. Before the loan came due, the plaintiff paid between $590 and $690 per month. After working out the agreement with the bank, her monthly payment was $937.14. The bank would not refinance the mortgage because title remained in the defendant's name as a joint tenant with rights of survivorship, and

because the IRS had attached a lien for the defendant's federal tax obligation.

In September 1996, the plaintiff filed a motion to modify the stipulation so that title to the residence would be in her name only. Additionally, she alleged that the defendant had paid neither the consumer debt nor her tax obligations, and thus she requested that the MG be awarded to her.

Subsequently, the plaintiff filed a motion to clarify her position, asserting that the primary issue before the court was "the need to review and revise" the provisions of the stipulation regarding the residence and the alimony. The intent of those provisions, according to the plaintiff, was to require the defendant to pay off the second mortgage. Because the house had no equity, the plaintiff asserted that she was not seeking to modify a property settlement. She proposed as a "reasonable solution" that the defendant be required to pay two-thirds of the second mortgage, that he be released from the alimony obligation, and that the house be put in her name. The defendant countered that it was not the parties' intent that he pay off the second mortgage, but that he assist the plaintiff through alimony in making the mortgage payments, as she could not afford the payments at that time. He alleged that they intended merely to provide their children with stability throughout the divorce, and that soon thereafter they intended to sell the house and discharge the second mortgage. The defendant agreed, however, to quitclaim his interest in the house to the plaintiff if the court terminated the alimony.

At the motion hearing, the plaintiff testified that she had agreed to the alimony provision because she could not afford the second mortgage, and that she "felt" that because the loan had been used to finance a company that the defendant had previously owned, he was responsible for at least two-thirds of that obligation. The defendant acknowledged that he had agreed to the alimony provision because the plaintiff could not afford the mortgage payments at the time of the divorce, but denied that he had agreed to pay down the second mortgage.

The trial court found that the alimony "was not truly alimony." Rather, the court determined that the plaintiff had never been entitled to alimony, and ruled that she would no longer be entitled to alimony. The court further found that the parties had agreed that the defendant would pay two-thirds of the second mortgage, and "accept[ed] the plaintiff's argument that the situation came about as the result of mistake or because of confusion." Thus, the court "view[ed] the $700.00 monthly payment as a payment against the

second mortgage," and ordered that the defendant be responsible for two-thirds of the balance on that mortgage at the time of the divorce. The court ruled that the alimony payments that the defendant had paid would reduce his obligation to pay two-thirds of the second mortgage, and that he would continue to pay $700 per month by wage assignment until he had satisfied the obligation. The court also ordered the defendant to quitclaim to the plaintiff his interest in the residence. With respect to the MG, the court stated that it found "the language in the stipulation . . . to be confusing. Therefore, title shall permanently remain with the plaintiff."

On appeal, the defendant argues in part that the evidence was insufficient to support the court's order modifying the parties' permanent stipulation regarding distribution of their property. He also argues that the court applied an incorrect standard in modifying the provision concerning the MG.

■ "[A] property settlement in a divorce decree is a final distribution of a sum of money or a specific portion of the spouses' property and is not subject to judicial modification on account of changed circumstances." *McSherry v. McSherry*, 135 N.H. 451, 453, 606 A.2d 311, 313 (1992) (quotation, ellipsis, and brackets omitted). Rather, such a property distribution "will not be modified unless the complaining party shows that the distribution is invalid due to fraud, undue influence, deceit, misrepresentation, or mutual mistake." *Shafmaster v. Shafmaster*, 138 N.H. 460, 464, 642 A.2d 1361, 1364 (1994); *see Grabowski v. Grabowski*, 120 N.H. 745, 747, 422 A.2d 1040, 1042 (1980); *Durkin v. Durkin*, 119 N.H. 41, 42, 397 A.2d 304, 304 (1979).

The trial court modified the parties' property settlement by ordering, contrary to the plain language of the stipulation, that the defendant pay two-thirds of the second mortgage. *See McSherry*, 135 N.H. at 453, 606 A.2d at 313. The court found that the parties agreed that the defendant would pay two-thirds of the mortgage, that the mortgage would be paid through the "alimony" payments, and that "the situation came about as the result of mistake." Accordingly, we will uphold this modification only if the plaintiff met her burden to establish that the property settlement resulted from mutual mistake.

■ Reformation of an instrument for mutual mistake of fact requires that the party seeking reformation "demonstrate by clear and convincing evidence that (1) there was an actual agreement between the parties, (2) there was an agreement to put the agreement in writing, and (3) there is a variance between the prior

agreement and the writing." *A.J. Cameron Sod Farms v. Continental Ins. Co.*, 142 N.H. 275, 283, 700 A.2d 290, 295 (1997) (quotation omitted). "The plaintiff's burden of proof in a reformation action is a heavy one." *Id.* (quotation omitted). While parol evidence generally cannot vary or contradict a writing, it may establish that the writing itself does not reflect the actual agreement reached by the parties. *Grabowski*, 120 N.H. at 748, 422 A.2d at 1042.

"Findings of fact by a trial court are binding on us unless they are not supported by the evidence or are erroneous as a matter of law." *McCabe v. Arcidy*, 138 N.H. 20, 24, 635 A.2d 446, 449 (1993). We find in this case insufficient evidence to support the trial court's determination that the parties had agreed that the defendant would pay two-thirds of the second mortgage, and reverse the court's order to the extent it obligates the defendant to pay that mortgage.

■ Although the plaintiff testified that she "felt" that the defendant was responsible for at least two-thirds of the second mortgage, and that she was unhappy with the term "alimony" when she reviewed the stipulation with her lawyer, she presented no evidence establishing that the defendant ever agreed to pay two-thirds of the mortgage, and the record reveals no such agreement. Indeed the defendant, while testifying that the alimony was to be used to make payments on the second mortgage, denied that he had ever agreed to pay it off or to pay two-thirds of it. Although conflicting testimony as to the parties' understanding does not necessarily negate a finding that an instrument fails to express their intent, *see id.* at 28, 635 A.2d at 451, reformation requires clear and convincing evidence of an *agreement* that, due to the parties' mutual mistake, was never reduced to writing, *compare Gagnon v. Pronovost*, 97 N.H. 58, 63-64, 80 A.2d 381, 384-85 (1951) (evidence failed to establish agreement), *with McCabe*, 138 N.H. at 28, 635 A.2d at 451 (evidence established agreement), *and Grabowski*, 120 N.H. at 748-49, 422 A.2d at 1042-43 (same). The evidence in this case, while establishing that the plaintiff *thought* that the defendant should pay two-thirds of the second mortgage, and that he intended to assist the plaintiff in making some payments, fails to demonstrate that the defendant *agreed* to assume liability for two-thirds of the mortgage.

The language in the stipulation that the alimony was to terminate upon the second mortgage being paid off or canceled does not compel a different result. Although the plaintiff argues that "[t]here is no other rational explanation for th[at] language," we find the language to be consistent with the defendant's testimony — that the

alimony was to assist the defendant in making the mortgage payments to maintain the status quo until the house was sold. Indeed, the plaintiff's argument fails to account for the other contingencies that would also have terminated the alimony, and that are not tied to the second mortgage.

The plaintiff argues, however, that the parties' testimony regarding their income and expenses at the time of the divorce, and the circumstances surrounding the execution of the stipulation, support the trial court's reformation. According to the plaintiff, the defendant "lacked the high level of income that would normally be seen if [the alimony provision] were a true alimony provision." The plaintiff fails to demonstrate, however, and we cannot discern, how this evidence shows that the defendant ever agreed to assume two-thirds of the second mortgage, or intended that the "alimony" payments would pay two-thirds of an interest-only loan.

The plaintiff also argues that the parties were mistaken at the time of the divorce as to the value of the residence, and that the second mortgage would soon be due. These mistakes, according to the plaintiff, warranted reformation.

Assuming, without deciding, that the trial court was referring to those mistakes when it "accept[ed] the plaintiff's argument that the situation came about as the result of mistake," that the evidence would support such a finding, and that such a finding could justify a modification of the property settlement, we cannot uphold the trial court's modification on that basis alone. The trial court based its order requiring the defendant to pay two-thirds of the second mortgage largely upon its erroneous finding that the parties had come to that agreement. We cannot conclude that the court would have reached this same result absent such a finding.

■ The trial court also modified the divorce decree by ordering that the defendant deed his interest in the residence to the plaintiff. *See Johnson v. Coe*, 142 N.H. 182, 187-88, 697 A.2d 939, 943 (1997). Although the parties offered no evidence of an agreement at the time of the divorce that the plaintiff would own the residence outright, the defendant agreed to quitclaim his interest if the court terminated the alimony. The court did terminate the alimony but premised the termination on its finding that the parties' true intent was that the defendant pay two-thirds of the second mortgage. Because we have determined that this finding was in error, we vacate the court's order to the extent that it terminated the alimony and ordered the defendant to deed his interest to the plaintiff. Similarly, we vacate the portion of the trial court's order providing

that the "'alimony' or second mortgage payment" would be paid via wage assignment.

The defendant next argues that the trial court impermissibly modified a property settlement when it ruled that because the stipulation was confusing, title to the MG would remain with the plaintiff permanently. We agree that "confusion" is not a proper standard to modify a property settlement. *See Shafmaster*, 138 N.H. at 464, 642 A.2d at 1364. If, on the other hand, the trial court's order merely implemented the terms of the stipulation, it would not result in a modification of a property settlement. *Cf., e.g., Bonneville v. Bonneville*, 142 N.H. 435, 438, 702 A.2d 823, 825 (1997).

The plaintiff essentially argues that the trial court's order interprets the stipulation to mean that the defendant's full payment of the taxes and consumer debt was a condition precedent to his interest in the car, and that failure to fulfill those obligations within an unspecified amount of time would result in permanent forfeiture of that interest.

In interpreting the meaning of a divorce decree, we review the decree *de novo. Id.* We consider the intent of the parties as expressed in the language of the stipulation. *Miller v. Miller*, 133 N.H. 587, 590, 578 A.2d 872, 873 (1990). Because conditions precedent are disfavored, we infer that the parties intended a condition precedent only where the plain language of the decree or stipulation requires such a construction. *Bonneville*, 142 N.H. at 438, 702 A.2d at 826.

The plain language of the stipulation does not require that we construe the language as a condition precedent. The stipulation states that "the Defendant is awarded . . . the 1960 MG." Only after awarding the MG to the defendant does the stipulation provide that "title to the 1960 MG automobile shall be transferred to the Defendant when the Defendant has paid the [consumer debt] and the Plaintiff's tax obligation." The language awarding the MG to the defendant, with the condition stated after that language, indicates an intent to create an immediate property interest. *Cf. Bonneville*, 142 N.H. at 439, 702 A.2d at 826. Accordingly, we construe the stipulation as providing the defendant with a vested property interest in the MG, and the plaintiff with a security interest.

■ Because we find that the stipulation awarded the defendant a vested interest in the MG, we conclude that the trial court modified that interest when it ruled that title would remain permanently with the plaintiff. *See Johnson*, 142 N.H. at 187-88, 697 A.2d at 943. The defendant's "inability, and reluctance, to timely pay

the [consumer debt and the taxes] does not justify amending the final terms of the decree." *Bonneville*, 142 N.H. at 439, 702 A.2d at 826. Accordingly, we reverse that portion of the trial court's order that awards title to the MG to the plaintiff permanently.

Upon review of the plaintiff's remaining arguments, we conclude that they are without merit under the circumstances of this case, and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

In view of the result reached, we need not address the defendant's remaining arguments. *See Aranosian Oil Co. v. City of Portsmouth*, 136 N.H. 57, 61, 612 A.2d 357, 359 (1992). We remand for further proceedings consistent with this opinion.

*Reversed in part; vacated in part; remanded.*

All concurred.