Merrimack
No. 2007-227

IN THE MATTER OF RICHARD R. LEMIEUX AND JOANNE LEMIEUX

Argued: May 21, 2008
Opinion Issued: June 13, 2008

*Cook & Molan, P.A.*, of Concord (*Shawn J. Sullivan* on the brief and orally), for the petitioner.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jeanmarie Papelian* and *Joel T. Emlen* on the brief, and *Mr. Emlen* orally), for the respondent.

DALIANIS, J. The petitioner, Richard R. Lemieux, appeals an order recommended by a Marital Master (*Rein,* M.) and approved by the

Superior Court (*McHugh*, J.) dismissing his petition to bring forward and approve a qualified domestic relations order (QDRO). The primary issue in the case is whether the trial court erred when it found that the petitioner failed to state a claim for reformation based upon mutual mistake of law. We reverse and remand.

The record supports the following facts: The petitioner, a federal employee, has a pension plan with the federal civil service retirement system. He and the respondent, Joanne Lemieux, were married in 1969 and divorced in 1990. Their final divorce decree incorporated the terms of their permanent stipulation, paragraph five of which provided:

> The [petitioner's] pension shall be equally divided between the parties in a QDRO benefit arrangement.
>
> a. [The respondent] is awarded 50% of the value of [the petitioner's] pension plan as of the date of the entry of the Libel of Divorce, pursuant to 29 U.S.C. Section [1056] (d)(3)(C).
>
> . . . .
>
> c. The percent of benefits to be paid to [the respondent] is 50% of the value as of the date of the entry of the Libel for Divorce.
>
> d. This Order applies to the entire pension plan in existence as of the above-referenced date.
>
> e. This Order applies to all pension plans in which [the petitioner] participates as a result of his employment by the Federal Government.
>
> f. Benefits for [the respondent] shall begin on the date [the petitioner] reaches earliest retirement age under the plan, whether or not he actually retired on that date.

On December 12, 2000, and January 24, 2001, the United States Office of Personnel Management (OPM), which administers the civil service retirement system, informed the petitioner that it had processed the respondent's claim pursuant to this paragraph of their stipulation. OPM awarded her fifty percent of the value of the petitioner's pension as of the date upon which he became eligible for retirement, a benefit of $1,354.93 per month.

In March 2001, the petitioner challenged OPM's decision, arguing that the respondent was entitled only to fifty percent of the value of his pension as of the date on which the divorce action was filed, January 19, 1990. According to his calculations, the respondent was entitled to a benefit of $794.50 per month. OPM rejected the petitioner's arguments, and he appealed to the Merit Systems Protection Board, which upheld OPM's decision. The petitioner then appealed the board's decision to the Court of Appeals for the Federal Circuit, which ruled that OPM's calculation of the

respondent's retirement benefit was correct. *Lemieux v. Office of Personnel Management,* 87 Fed. Appx. 727 (Fed. Cir. 2004).

In February 2006, the petitioner filed a petition to bring forward and approve a QDRO in superior court, arguing, in part, that a QDRO was needed to reform the parties' property settlement. The petitioner contended that reformation of the parties' property settlement was necessary because of a mutual mistake of law. The mutual mistake, he contended, was that paragraph five of the parties' permanent stipulation referenced the QDRO provision of ERISA, *see* 29 U.S.C.A. § 1056(d)(3)(C) (1999), even though his pension is exempt from ERISA. *See* 29 U.S.C.A. § 1003(b)(1) (1999) (governmental plans, including the petitioner's plan, are exempt from ERISA). Because of this mistake, he explained, paragraph five did not include the requisite language necessary to award a former spouse a percentage of a civil service retirement system pension as of the date of the parties' divorce. *See Lemieux,* 87 Fed. Appx. at 728.

Under the regulations governing civil service retirement benefits in effect when the parties divorced, to make such an award, the decree had to "either state the dollar amount of the award or explain with sufficient clarity that salary adjustments, as well as service, after the date of the decree are to be disregarded in computing the former spouse's share." *Id.* (quotation omitted). If the decree failed to include this language, the former spouse's share would be calculated as of the date of retirement and would include any increases in the annuity as a result of raises and cost-of-living adjustments in the years between the divorce and the retirement. *Id.* The parties' stipulation, which merely stated that the respondent was awarded fifty percent of the value of the petitioner's retirement as of the date of the entry of the libel for divorce, was ineffective under these regulations because it failed to "explicitly disallow the inclusion of raises and cost-of-living adjustments." *Id.*

The respondent filed a motion to dismiss the petition, which the trial court granted, ruling that the petitioner had failed to establish a mutual mistake of fact sufficient to reform the parties' stipulation. The petitioner moved for reconsideration, arguing, in part, that the mutual mistake at issue was one of law, not fact. The trial court rejected this argument, ruling that the alleged mistake of law did not require reforming the parties' stipulation because "it is not impossible for the retirement plan administrator to comply with [its] terms . . . as written." This appeal followed.

In reviewing the trial court's grant of a motion to dismiss, our standard of review is whether the allegations in the petitioner's pleadings are reasonably susceptible of a construction that would permit recovery. *McNamara v. Hersh,* 157 N.H. 72, 73 (2008). We assume the petitioner's pleadings to be true and construe all reasonable inferences in the light most

favorable to him. *Id.* We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *Id.*

The petitioner argues that the trial court erred when it rejected his claim that the parties' stipulation could be reformed because of a mutual mistake of law. We agree it *could*, but not that it *had to*, be reformed. That will be decided on remand.

■ It is well established that courts may grant reformation in proper cases where the instrument fails to express the intentions that the parties had in making the contract. *Grabowski v. Grabowski*, 120 N.H. 745, 747 (1980). This principle applies to marital decrees that incorporate mutual mistakes in property settlements. *Id.*

■ Courts may grant reformation only when the evidence is clear and convincing that the written instrument does not express the true agreement of the parties. *Id.* "Although the plain meaning rule bars consideration of parol evidence to vary or contradict the meaning of a writing, parol evidence may establish that, due to a mutual mistake, the writing does not reflect the agreement of the parties." *Id.* at 748.

■ The respondent contends that reformation may be had only for a mutual mistake of fact. To the contrary, while this is the law in a few jurisdictions, *see* 66 AM. JUR. 2D *Reformation of Instruments* § 15, at 239 (2001), it is not the law in New Hampshire. In New Hampshire, as in many other jurisdictions, "when either type of mistake results in the parties' obvious failure to articulate their true and discoverable intent, reformation is available if justice and common sense require it." *Hovden v. Lind*, 301 N.W.2d 374, 379 (N.D. 1981); *see Eastman v. Association*, 65 N.H. 176, 176-77 (1889).

■ Modern contract law does not distinguish between mistakes of fact and mistakes of law, but treats both alike for purposes of equitable relief. 27 R. LORD, WILLISTON ON CONTRACTS § 70:125, at 615 (4th ed. 2003); *see* RESTATEMENT (SECOND) OF CONTRACTS § 151 comment *b* at 384 (1981) ("The rules stated in this Chapter do not draw the distinction that is sometimes made between 'fact' and 'law.' They treat the law in existence at the time of the making of the contract as part of the total state of facts at that time."); 7 J. PERILLO, CORBIN ON CONTRACTS § 28.49, at 343 (revised ed. 2002) ("Today, the rule denying relief for mistake of law has little vitality. It has been eroded by so many qualifications and exceptions, varying from jurisdiction to jurisdiction. It is common to find cases where the issue is not even raised."); 2 E. A. FARNSWORTH, FARNSWORTH ON

CONTRACTS § 9.2, at 564 (2d ed. 1998) ("[T]he modern view is that the existing law is part of the state of facts at the time of agreement. Therefore, most courts will grant relief for such a mistake, as they would for any other mistake of fact.").

> The important question is not whether the mistake was one of law or fact, but whether it was the type of fabric that a court of equity would mend. Eligible candidates are those cases falling within the fundamental principle of equity—that no one shall be allowed to be enriched unjustly at the expense of another by reason of an innocent mistake of law or fact entertained by both parties.

LORD, *supra* § 70:125, at 616.

We have issued only a few opinions regarding reformation for mutual mistake of law. *See Massicotte v. Matuzas*, 143 N.H. 711, 713 (1999); *Archer v. Dow*, 126 N.H. 24, 28-29 (1985); *Eastman*, 65 N.H. at 176-77. *Massicotte* and *Archer* involved land conveyances. Both cases cited the following rule: "It is old and well-established law that equity, at the instance of a grantor will reform a voluntary conveyance, where, by mistake of law or fact, a larger estate or more land has been granted than was intended to be conveyed." *Massicotte*, 143 N.H. at 713 (quotation and ellipses omitted); *see Archer*, 126 N.H. at 28-29. *Eastman*, on the other hand, involved the reformation of a certificate of membership issued by the defendant to Gigar, the plaintiff's intestate. *Eastman*, 65 N.H. at 176. The parties "intended to make the benefit payable to Gigar's administrator. That it was not made payable to him was due to their mutual misapprehension of the legal effect of the language used in the certificate." *Id.* The court ruled that "[e]quity requires an amendment of the writing that will make the contract what the parties supposed it was and intended it should be, although their mistake is one of law and not of fact." *Id.* at 177.

■ ■ We find *Eastman* controlling in this case. According to the petitioner's allegations, the parties intended to award the respondent fifty percent of his pension as of the date of the divorce decree, not as of the date of his eventual retirement. That the language of their stipulation failed to accomplish this was due to their mutual misapprehension of the legal effect of the language they used. We hold that these allegations are sufficient to state a claim for reformation based upon a mutual mistake of law. *See* RESTATEMENT (SECOND) OF CONTRACTS, *supra* § 155 comment *a* at 407 ("If the parties are mistaken with respect to the legal effect of the language that they have used, the writing may be reformed to reflect the intended effect."). Accordingly, we reverse the trial court's ruling to the contrary and

remand for further proceedings consistent with this opinion. *See Hearn v. Hearn*, 936 A.2d 400 (Md. Ct. Spec. App. 2007).

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.