**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0481, In the Matter of Charles Porrier and BingBing Li, the court on August 17, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The petitioner, Charles Porrier (Husband), appeals a post-divorce order of the Circuit Court (Derby, J.), which awarded the respondent, BingBing Li (Wife), "the interest, reinvested dividends and appreciation" generated during the marriage by the premarital contributions Husband made to his Vanguard Individual Retirement Account (IRA) and his FAM Funds Roth IRA (collectively, Husband's Retirement Accounts). We reverse and remand.

The trial court found the following facts. The parties were married on September 30, 2010. Husband filed for divorce in March 2017. During the divorce proceedings, at the close of evidence on September 5, 2019, "the court noted that there had been no evidence as to the amount of the marital coverture portion of [Husband's] retirement accounts." Wife sought "an unequal 60/40 division and [Husband] asked for a 50/50 division." Because the parties were unable to agree "as to the marital coverture" portion of Husband's Retirement Accounts, the court supplied a formula for them to follow.

Specifically, the court awarded Wife "half of the marital coverture portion of [Husband's] Vanguard IRA and FAM Funds Roth IRA." The trial court defined the "marital coverture portion" of those accounts as:

1. All funds contributed to either the Vanguard IRA or the FAM Funds Roth IRA, or to any prior retirement account which was rolled into those accounts, between September 30, 2010 and September 5, 2019; where
2. The funds contributed were earned by either party between September 30, 2010 and September 5, 2019; or
3. The funds contributed between September 30, 2010 and September 5, 2019 came from non-retirement funds owned by either party; and
4. All growth of those funds, including appreciation of the investments selected, interest earned, capital gains distributions earned, and any reinvestments of those distributions, and subsequent earnings and reinvestments.

The court noted that Husband's "Glenns Falls Hospital retirement fund" was rolled over into the Vanguard IRA in 2012, approximately two years after the parties married, but that most of the hospital retirement account was earned before the marriage. The court explained that, therefore, "some portion of what was rolled over . . . included [both] pre-marital and marital funds." Accordingly, the court stated, pursuant to the formula set forth in the decree, the rollover had "to be divided between pre-marital and marital funds, to reflect contributions made between September 30, 2010 and the fall of 2012." The court further explained that "if a party took non-retirement funds and contributed them to a Roth IRA or other IRA between September 30, 2010 and September 5, 2019, those contributions shall count toward the marital portion." The court directed the parties to share equally in the cost of calculating "the marital portion" of Husband's Retirement Accounts.

The parties' divorce became final in April 2021. Thereafter, the parties disagreed, primarily, about whether their divorce decree entitled Wife to a percentage of the earnings accrued during the marriage on Husband's premarital contributions to his Retirement Accounts. Husband contended that Wife was entitled to half of the earnings accrued during the marriage only on the contributions made to his Retirement Accounts during the marriage. By contrast, Wife asserted that the decree entitled her to share in the increases in value to Husband's premarital contributions to his Retirement Accounts that accrued during the parties' marriage.

The trial court accepted the underlying numbers set forth in Husband's actuary report, but agreed with Wife's position, as follows. With respect to the FAM Funds Roth IRA, relying upon Husband's actuary's report, the court determined that $97,280.46 of the account was subject to equitable distribution. This amount represents the difference between the balance of the account as of September 5, 2019 ($129,746.18) and the balance of the account as of October 2, 2010 ($32,465.72). The court awarded Wife $48,640.23 from this account, which represents one-half of $97,280.46.

With respect to the Vanguard IRA, relying upon Husband's actuary report, the court determined that $384,188.20 of the account was subject to equitable distribution. This amount represents the difference between the balance of the account as of September 30, 2019 ($746,207.00) and the balance of the account as of September 30, 2010 ($85,954.80), less the entire amount of the Glenns Falls Hospital retirement account rollover ($276,064.00). The trial court ruled that Wife was entitled to $192,094.10, which represents one-half of $384,188.20. Husband unsuccessfully moved for reconsideration, and this appeal followed.

2

The sole issue in this appeal is whether awarding Wife one-half of the increased value of Husband's premarital contributions to his Retirement Accounts impermissibly modified the property division set forth in the parties' divorce decree. We conclude that it did.

The trial court may not modify a property distribution in a final divorce decree absent certain limited circumstances that are not at issue here. See Sommers v. Sommers, 143 N.H. 686, 689 (1999). The trial court may, however, interpret the decree in the course of resolving a post-divorce dispute. See id. at 692. The interpretation of a trial court order presents a question of law, which we review de novo. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008). We look to the plain meaning of the language used in the decree, and construe subsidiary clauses so as not to conflict with its primary purpose. Id.

Reading the property division portion of the decree as a whole, we conclude that it did not entitle Wife to share in the amounts generated during the marriage by the premarital contributions Husband made to his Retirement Accounts. The decree awarded Wife one-half of:

> 1. All funds contributed to either the Vanguard IRA or the FAM Funds Roth IRA, or to any prior retirement account which was rolled into those accounts, between September 30, 2010 and September 5, 2019; where
> 2. The funds contributed were earned by either party between September 30, 2010 and September 5, 2019; or
> 3. The funds contributed between September 30, 2010 and September 5, 2019 came from non-retirement funds owned by either party; and
> 4. All growth of those funds, including appreciation of the investments selected, interest earned, capital gains distributions earned, and any reinvestments of those distributions, and subsequent earnings and reinvestments.

(Emphases added.) Pursuant to their plain meaning, paragraphs 1, 2, and 3 of the divorce decree awarded Wife one-half of certain funds contributed to Husband's Retirement Accounts or to any prior such account, which was then rolled into the Retirement Accounts, "between September 30, 2010 and September 5, 2019," meaning, roughly, during their marriage. The phrase "funds contributed" refers to a sum of money given. See Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/fund (last visited August 11, 2023) (defining "fund" as a "sum of money"); id., https://unabridged.merriam-webster.com/unabridged/contribute (last visited August 11, 2023) (defining "contribute" as "to give or grant in common with others (as to a common fund

3

or for a common purpose)"). The contributed funds to which Wife was entitled were those that either were earned by one of the parties during the marriage or came from "non-retirement funds owned" by one of the parties. In context, the "earned" funds given to the Retirement Accounts are those "earned" by the parties as wages. See id., https://unabridged.merriam-webster.com/unabridged/earn (last visited August 11, 2023) (defining "earn" as "to receive as equitable return for work done or services rendered"). This is because, although the verb "to earn" can refer to "bring[ing] in by way of return," as with "income-producing property," the verb "contributed" suggests an active, rather than a passive, process. Id.

Thus, paragraphs 1, 2 and 3 of the decree awarded Wife one-half of the money either she or Husband gave to his Retirement Accounts from their wages or non-retirement funds during the marriage and one-half of the money she or Husband contributed during the marriage to any prior retirement account that thereafter was rolled into one of his Retirement Accounts. According to Husband's actuary, the total of such contributions during the marriage to the Retirement Accounts was $59,549. Wife is, therefore, entitled to one-half of this amount ($29,774.50).

Paragraph 4 of the decree also entitled Wife to one-half of the "growth of those funds." In context, the phrase "growth of those funds" refers to the growth in the funds to which paragraphs 1, 2, and 3 refer; that is, those funds that were contributed during the parties' marriage, not before it. (Emphasis added.) According to Husband's actuary, the growth attributable to the contributions to the Retirement Accounts made during the marriage was $35,855. Wife is entitled to half of that amount ($17,927.50). In all, she is entitled to $47,702 ($29,774.50 plus $17,927.50).

By awarding Wife one-half of the increased value attributable to Husband's premarital contributions to his Retirement Accounts, the trial court impermissibly modified the property distribution set forth in the parties' final divorce decree. We, therefore, reverse the trial court's order and remand for further proceedings consistent with this order. Although in her opposing brief Wife purports to challenge the validity of Husband's actuary report and, presumably, the trial court's reliance upon it, we observe that she did not file a cross-appeal, and, thus, these issues are not properly before us. Even if they were properly before us, Wife has failed to persuade us that the trial court unsustainably exercised its discretion by accepting the underlying numbers in the actuary report. We have reviewed Wife's remaining arguments and

4

conclude that they lack merit and warrant no extended consideration.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Reversed and remanded.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**